IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY HANDY, JR. | : | CIVIL ACTION |
| v. | : | No. 17-3107 |
| LEELONI PALMIERO, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                           September 28, 2018

      Plaintiff Rodney Handy, Jr. filed this Amended Complaint against the City and County of Philadelphia (City),[1] Philadelphia Police Commissioner Richard Ross in his official capacity (Commissioner Ross),[2] and five named Philadelphia law enforcement officers and ten "Doe" Defendants in their individual capacities (collectively, the Individual Defendants) pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986 and Pennsylvania state law. His claims arise out of a shooting at a hookah lounge and the subsequent search of his home by law enforcement officers in May 2015. Defendants move to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' motion to dismiss will be granted in part and denied in part.

**FACTS**

      Handy, an African-American man, patronized the Pasa La Hookah Lounge on the night of May 23, 2015. *See* Am. Compl. ¶¶ 1, 32, 34. While there, he was "attacked, assaulted[,] and

---

[1] While Handy also names the City of Philadelphia Police Department as a party in his Amended Complaint, it is no longer a party as it has been previously dismissed with prejudice from this action. *See* Order, Oct. 17, 2017, ECF No. 11.

[2] Because a claim against an individual in his official capacity requires allegations that a policy or custom of the governmental entity was the moving force behind violations of Constitutional or federal law, "official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dept. of Soc. Servs. of N.Y*, 436 U.S. 658, 690 n.55 (1978)). Therefore, claims against Commissioner Ross, who has only been sued in his official capacity, will not be separately addressed.

shot by one or more business invitees and patrons of the [Lounge]." *Id*. ¶ 35. He was then transported to the hospital by one or more unidentified Defendants.[3] *See id*. ¶ 36. While the incident was observed by several witnesses and recorded on videotape by the Lounge, Handy alleges Defendants only conducted a cursory investigation and "made no attempt to obtain a copy of the videotape" or "apprehend the person or persons who shot [Handy]." *See id*. ¶¶ 37-40.

The next day, on May 24, 2015, law enforcement officers, including and Sergeant Baldomero and Officer Palmiero, conducted a search of Handy's residence pursuant to a search warrant. *See id*. ¶¶ 181-82. Handy alleges this search was conducted "without a statement of probable cause having been alleged in the application and affidavit for the search warrant" and was not otherwise established. *Id*. ¶ 183. As a result of the search, a handgun, ammunition, and two bullet-proof vests—none of which belonged to Handy—were seized from Handy's residence. *Id*. ¶¶ 185-86.

An article concerning the shooting at the Lounge and the search of Handy's residence was published in *The Philadelphia Daily News* on May 26, 2015, based on "[o]ne or more Defendants" advising *Daily News* and other news organizations that (1) "Handy's gunshot wounds were self-inflicted"; (2) he was "uncooperative"; (3) "guns, ammunition and bullet-proof vests" belonging to him were found at his residence; and (4) a "green-weedy substance" belonging to him had been found in the emergency room where he was being treated. *See id*. ¶¶ 44, 50, 56, 62. Handy alleges Defendants knew at the time they made the statements that the statements were false, meritless, and untrue, and that Defendants made these statements for the purpose of branding him as a criminal and mentally ill, even though he was a victim of a crime

---

[3] The individually named Defendants are described in the Amended Complaint as either non-African American or Caucasian. *See* Am. Compl. ¶¶ 6, 9, 12, 15, 18.

and never arrested for any of the above-described conduct. *See id.* ¶¶ 43-66. He further alleges the search, seizure, and the statements made to the press were all retaliatory acts by Defendants in response to a 2012 incident during which Handy questioned the legal basis for the use of force by law enforcement officers and Handy's subsequent lawsuit in 2014 arising out of that incident. *See* Am. Cmpl. ¶¶ 148-55.

Next, citing a 2003 report by the Integrity and Accountability Office of the Philadelphia Police Department, Handy alleges deficiencies in the ability of the Police Department Internal Affairs Division to respond to complaints of police misconduct. *See id.* ¶¶ 72-75, 82-84. The pleadings, however, do not appear to allege Handy filed a complaint with the Division. Handy then alleges that it is "the longstanding, widespread, deliberately-indifferent custom, habit, practice and/or policy" of the City and Commissioner Ross to permit its law enforcement officers to engage in unlawful conduct, and that they have failed to supervise and train their personnel in the constitutional rights of individuals. *See id.* ¶¶ 76-81. Specifically, Handy alleges the City and Ross "ongoingly encouraged, tolerated, ratified, and acquiesced" to a "dangerous environment" of excessive force and police brutality, police racism, and police retaliation in response to the exercise of First Amendment rights by (1) failing to conduct sufficient training or supervision on concerning these unlawful actions; (2) failing to adequately punish these unlawful actions; (3) tolerating these unlawful actions; (4) ongoingly failing to properly or neutrally investigate citizen complaints of such unlawful actions; (5) tolerating, encouraging, and permitting collusive statements by the officers who are engaged in such actions; and (6) ignoring systemic deficiencies in the investigatory and disciplinary mechanisms of the Philadelphia Police Department. *See id.* ¶¶ 76-81.

3

Based on the foregoing, Handy filed a Complaint against Defendants in the Court of Common Pleas of Philadelphia County in May 2017. Defendants removed the action to this Court on July 12, 2017, and filed a motion to dismiss the Complaint on August 21, 2017. This Court granted Defendants' motion to dismiss, and Handy subsequently filed an Amended Complaint on November 16, 2017.[4] In Counts I-V of his Amended Complaint, Handy asserts claims for race discrimination, conspiracy, First Amendment retaliation, Fourteenth Amendment defamation, and Fourth Amendment unlawful search and seizure against all Defendants, i.e., the Individual Defendants and the City/Commissioner Ross. In Count VI, he appears to reassert the previously asserted claims against the City in Counts I-V and explicitly asserts a claim against the City for municipal liability under *Monell*. The balance of the Amended Complaint contains numerous state law claims against the Individual Defendants. Defendants move to dismiss all claims in the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Handy has again failed to state any claims upon relief can be granted. The Court will first address Handy's federal law claims against the Individual Defendants in Counts I-V and will discuss the federal law claims against the City—contained in Counts I-V and reasserted in Count VI—in Count VI. The remaining state law claims against the Individual Defendants will be discussed last.

---

[4] Handy's Amended Complaint vaguely references "police brutality," "racially-motivated beatings [and] arrests," and the "filing of false charges," *see, e.g.*, Am. Compl. ¶¶ 76, 98, but the Amended Complaint fails to allege facts supporting these assertions. These vague references will not be addressed by the Court as Handy was directed to "identify relevant dates, locations and circumstances of each alleged violation of his rights, what rights have been violated, and how each Defendant participated in each alleged violation" in the Court's October 2017 Order dismissing his original Complaint. *See* Order, Oct. 17, 2017, ECF No. 11.

## DISCUSSION

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a court first must separate the legal and factual elements of the plaintiff's claims. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true," *id.* at 210-11, but need not accept "bald assertions" or "legal conclusions" made in plaintiff's papers, *see In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (citation omitted). The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). To satisfy this standard, the complaint must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. *Phillips v. Cty. of Allegheny¸* 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

**Racial Discrimination**

In Count I, Handy asserts a race-based Equal Protection Clause claim and a § 1981 Civil Rights Act claim against all Defendants pursuant to 42 U.S.C. § 1983. Section 1983 provides a right of action to a plaintiff whose "rights, privileges, or immunities secured by the United States Constitution and laws of the United States" were violated by an official acting under color of law. *Nextel Partners Inc. v. Kingston Twp*., 286 F.3d 687, 693-94 (3d Cir. 2002) (internal

quotation marks and citations omitted). Handy alleges that his race and other "arbitrary factors" were motivating factors in the law enforcement officers' decision to brand him as "mentally ill and a criminal" and subject him to an "unlawful and excessive search and seizure." Am. Compl. ¶ 104. He further contends that he was treated differently from other similarly-situated Caucasian crime victims because of race and other arbitrary factors, such as the 2012 incident and related lawsuit in 2014. *See id*. ¶¶ 106-07.

The Equal Protection Clause, which is part of the Fourteenth Amendment to the United States Constitution, prohibits the denial of equal protection of the law to any person. *See* U.S. Const. amend. XIV § 1. This Clause essentially directs the Government to treat alike all persons similarly situated. *See Mosca v. Cole*, 217 F. App'x 158, 163 (3d Cir. 2007) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To assert a race-based claim under the Equal Protection Clause, a plaintiff must allege:

> (1) he is in a protected class; (2) the defendant acted under the color of state law, *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005); and (3) the defendant treated the plaintiff differently because of his race, *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992), or, put differently, acted with a racially discriminatory intent or purpose, *Antonelli v. New Jersey*, 419 F.3d 267, 274 (3d Cir. 2005).

*Johnson v. Fuentes*, 704 F. App'x 61, 65 (3d Cir. 2017). To ultimately succeed on a claim for a violation of the Equal Protection Clause, "[p]roof of racially discriminatory intent or purpose is required." *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003) (internal quotation marks and citation omitted).

Section 1981 of the Civil Rights Act, which prohibits racial discrimination in the making and enforcement of contracts and property transactions, provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the

> security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

42 U.S.C. § 1981. To state a claim under 42 U.S.C. § 1981, a plaintiff must allege: "(1) [that the plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts . . . ." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). This statue only reaches purposeful discrimination. *See Chauhan v. M. Alfieri Co.*, 897 F.2d 123, 126 (3d Cir. 1990).

Here, Handy's claims fail for the same reasons they failed in his initial Complaint—he makes no factual allegations suggesting race motivated any of the Defendants' conduct. As to his Equal Protection claim, while Handy alleges he was treated differently from Caucasian victims because of his race, this assertion is only supported by the fact that he is African American and the named Individual Defendants are not. He provides no other facts to suggest the Defendants' conduct was motivated by race, such as explaining how Handy, as an African-American victim, was subject to different treatment than Caucasian crime victims. *See Raven v. City of Phila.*, No. 15-4146, 2017 WL 930316, at *4 (E.D. Pa. Mar. 8, 2017) (dismissing plaintiff's race-based Equal Protection claim that made only "conclusory statement[s]" that African-American employees were subject to different treatment than Caucasian employees). His § 1981 claim suffers from the same fatal defect. As a result, Handy's Equal Protection Clause and § 1981 claims against the Individual Defendants will be dismissed. Because Handy was previously given leave to amend these claims in his original Complaint, the Court finds further leave to amend would be futile. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (explaining "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court

7

must permit a curative amendment unless such an amendment would be inequitable or futile"). These claims will thus be dismissed with prejudice.

**Civil Rights Conspiracy**

In Count II, Handy asserts claims against all Defendants for conspiracy to violate his constitutional rights and failure to prevent the alleged conspiracy. To state a claim for conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983). A § 1985(3) claim survives a motion to dismiss where a plaintiff alleges specific facts suggesting a mutual understanding among conspirators to plot, plan, or conspire together in order to take actions directed toward an unconstitutional end. *See Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974).

Here, as in his original Complaint, Handy fails to allege specific facts suggesting a mutual understanding among the Defendants to plot, plan, or conspire together. While the Amended Complaint contains the conclusory statement Defendants "acted in concert . . . to deprive [Handy] of his civil rights," Am. Compl. ¶ 131, "courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3)" with near unanimity, *see Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972). Handy also fails to allege any facts that give rise to an inference of discriminatory animus, which also defeats his conspiracy claim. *See Aultman v. Padgett*, No. 03-3261, 2003 WL 22358445, at *5 (E.D. Pa. Sept. 9, 2003) (citing *Robinson*, 462 F.2d at 113 ("A conspiracy claim based upon

8

§ 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals.")). Handy's § 1985(3) claim against the Individual Defendants thus fails. Because a sufficiently pled claim under § 1985 is a prerequisite to a § 1986[5] claim for failure to prevent a conspiracy, Handy's § 1986 claim against the Individual Defendants also fails. *See Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994) (explaining "transgressions of [a] § 1986 [claim] by definition depend on a preexisting violation of § 1985" (internal quotation marks and citation omitted)). Because Handy was previously given leave to amend these claims in his original Complaint, further leave to amend would be futile. These claims will be dismissed with prejudice. *See Phillips*, 515 F.3d at 245.

**First Amendment Retaliation**

Handy next asserts a First Amendment retaliation claim in Count III against all Defendants pursuant to § 1983. The basis for this claim is (1) Handy's involvement in a 2012 incident with Philadelphia law enforcement officers during which he questioned the scope of the officers' legal authority to use force, and (2) his subsequent lawsuit against some of those officers in 2014. Handy alleges the 2012 incident and 2014 lawsuit motivated the alleged unlawful conduct.

To state a First Amendment retaliation claim pursuant to § 1983, a plaintiff must allege "(1) that [he] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). To allege causation, the plaintiff must

---

[5] To state a claim pursuant to 42 U.S.C. § 1986, a plaintiff must allege that: "(1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." *Clark*, 20 F.3d at 1295.

9

plead facts showing that the protected activity was a substantial or motivating factor behind the defendant's alleged retaliatory conduct. *See id*. Allegations of an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action or a pattern of antagonism coupled with timing are usually required to plead the requisite causal link. *See id.* Additionally, a plaintiff must also allege that the defendant was aware of the plaintiff's protected conduct. *See Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002).

Here, Handy has failed to sufficiently allege causation. The Amended Complaint is devoid of any factual allegations suggesting that the 2012 incident and 2014 lawsuit were substantial or motivating factors behind any Defendants' alleged retaliatory conduct. The alleged protected activities—questioning law enforcement officers in 2012 and filing a lawsuit in 2014—both occurred at least one year prior to any of the alleged retaliatory conduct. Such a time period does not indicate an unusually suggestive temporal proximity. *See Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (passage of three weeks between the filing of a complaint and the alleged retaliatory act did not unusually suggest retaliatory motive); *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003) ("[e]ven if timing alone could ever be sufficient to establish a causal link, . . . the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." (alteration in original) (internal quotation marks and citation omitted)).

Moreover, Handy does not allege any other interactions with the Defendants during this time period or additional facts to infer a pattern of antagonism by them. *Cf. Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (specific, discrete acts that took place over a short period of time presented a pattern of antagonism sufficient to support an inference of causation). Aside from a general allegation that the 2012 incident was well-publicized and well-known to all

members of the Philadelphia Police Department, Handy also fails to allege any specific facts indicating that the Defendants in this action were aware of Handy's past interactions with the members of the Philadelphia Police Department. As there are no facts suggesting Handy's 2012 incident or 2014 lawsuit were substantial or motivating factors in the Defendants' alleged conduct in 2015, Handy's claim for First Amendment retaliation against the Individual Defendants will be dismissed. He will not be given leave to amend this claim as it was also asserted in his original Complaint. *See Phillips*, 515 F.3d at 245.

**Fourteenth Amendment Defamation**

In Count IV, pursuant to § 1983, Handy asserts a Fourteenth Amendment Due Process Clause claim for defamation and harm to his reputation—an interest he contends is protected by the Pennsylvania constitution—against all Defendants based on the alleged statements made by law enforcement officers to the *Philadelphia Daily News*. As an initial matter, "reputation *alone* is not an interest protected by the Due Process Clause." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (internal quotation marks and citations omitted). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Id.* (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976) (holding a Due Process Clause claim for defamation was not viable where a police department circulated a flyer imputing criminal behavior to a person absent deprivation of an additional right or interest)); *see also Sturm v. Clark*, 835 F.2d 1009, 1012 (3d Cir. 1987) ("Absent the alteration or extinguishment of a more tangible interest, injury to reputation is actionable only under state defamation law.").

Handy's claim "is nothing more than a state [law] defamation action masquerading as a § 1983 claim," *see Garner v. Twp. of Wrightstown*, 819 F.Supp. 435, 440-41 (E.D. Pa. 1993), as

11

he fails to allege any more than an injury to his reputation. There are no facts to suggest the statements at issue deprived Handy of any additional rights or interests. *See id.* (holding the plaintiff failed to allege a cognizable § 1983 defamation claim based on allegedly defamatory statements notwithstanding plaintiff's citation to a provision of the Pennsylvania Constitution affording reputation heightened protection as a fundamental interest because "there [were] no facts to establish that [] untrue statements in any way effectuated an official judgment or even a change in [plaintiff's] status"). Although Handy alleges that he "may suffer lost future earnings and [an] impaired earning[] capacit[y]," as a result of the alleged defamatory statements, Am. Cmpl. ¶ 166, such speculative harm is not an additional right or interest. This fatal flaw requires the Court to dismiss Handy's Due Process claim for defamation against the Individual Defendants. He will not be given leave to amend as this claim was also asserted in his original Complaint. *See Phillips*, 515 F.3d at 245.

**Unlawful Search and Seizure**

In Count V, Handy asserts a Fourth Amendment claim against all Defendants pursuant to § 1983, alleging that the search warrant authorizing law enforcement officers to search Handy's residence was issued without a statement of probable cause attached to the warrant application and without probable cause otherwise having been established. In support of this claim, Handy attached the first page of the warrant application to his Amended Complaint—which does not contain a statement of probable cause but contains language suggesting an attachment was meant to be incorporated. *See* Am. Compl. Ex. A.[6]

---

[6] Handy attached the warrant application to his Amended Complaint, which the Court reviewed in determining the viability of his claim. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (holding documents a court may consider in deciding a Rule 12(b)(6) motion to dismiss include "the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents").

The Fourth Amendment protects against unreasonable searches and seizures and directs that no warrant shall be issued without "probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." *United States v Tracey*, 597 F.3d 140, 146 (3d Cir. 2010) (internal quotation marks and citation omitted). "Probable cause exists to support the issuance of a search warrant if, based on a totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997) (internal quotation marks and citation omitted). "Typically, the existence of probable cause in a § 1983 action is a question of fact." *Id*.

At this stage, Handy has sufficiently alleged his residence was searched without probable cause. He contends that the search warrant that was issued without both the requisite affidavit of probable cause and the existence of probable cause itself. Although the search of Handy's home was conducted pursuant to a signed search warrant application, taking Handy's factual allegations as true and construing all inferences in Handy's favor, the Court finds Handy has stated a plausible claim for relief.[7] This claim will thus proceed against the Individual Defendants.

*Monell* **Liability**

Based on all the alleged conduct, in Count VI, Handy asserts a municipal liability claim against the City pursuant to § 1983. A municipality may not be held liable for a federal rights violation under § 1983 based solely on the conduct of its employees. *See Monell*, 436 U.S. at

---

[7] In Count V, Handy appears to again assert Equal Protection and § 1981 claims pursuant to § 1983 based on the search and seizure. These claims were already set forth in Count I of Handy's Amended Complaint and addressed in the Court's analysis of them in Count I. They will be dismissed.

691. Rather, "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when [an] alleged [federal rights] transgression executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *See McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009) (citations omitted). In addition, the plaintiff must establish the municipality was the cause of any deprivation of [any federal] rights; the municipality can only be accountable if the deprivation was the result of a municipal custom or policy. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985).

Handy's *Monell* claims fail for two reasons. First, as to claims contained in Counts I-IV against the City, Handy has failed to sufficiently allege any underlying federal rights violations for the reasons explained above. Second, as to the claims contained in Counts I-V, rather than pointing to a specific policy, practice, or custom that caused the alleged federal rights violations, Handy relies on vague assertions about a police department's wrongdoings to demonstrate a municipal practice or policy. *See, e.g.*, *McTernan*, 564 F.3d at 658 (affirming district court's grant of a motion to dismiss when the plaintiff failed to "identify a custom or policy, and specify what exactly that custom or policy was"); *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) (affirming district court's grant of a motion to dismiss when complaint made "conclusory and general claims of failure to screen, train, or supervise employees to avoid constitutional violations"). Handy details deficiencies of the Philadelphia Police Department Internal Affairs Division, without alleging he filed a complaint with the Division, and then parrots the legal standard for municipal liability based on alleged custom, habit, practice, and/or policy of police brutality, excessive force, racism, retaliation, malicious prosecution, and unlawful searches and seizures but fails to include specific factual averments supporting his allegations. To the extent Handy's *Monell* claims against the City are based on the claims asserted in Counts I-IV, these

14

claims are dismissed with prejudice as Handy was previously given leave to amend these claims. *See Phillips*, 515 F.3d at 245. As Handy has sufficiently alleged an underlying federal rights violation in Count V, Handy's *Monell* claim based on the search and seizure allegations contained in Count V will be dismissed without prejudice.

**Defamation, Libel, Slander**

In Counts VII (which Handy enumerates twice) and VIII, Handy asserts claims for defamation, libel, and slander against the Individual Defendants under Pennsylvania state law arising out of statements made to *The Philadelphia Daily News*. Without providing the Court with supporting authority, the Individual Defendants argue that because Handy is unable to name the individuals who committed the alleged defamation, libel, and slander, these state-law claims must fail. The Court disagrees. The specificity of the statements alleged in the Amended Complaint coupled with the allegation that one or more of the defendants made the statements "are enough facts to raise a reasonable expectation that discovery will reveal" who made the statements. *See Phillips*, 515 F.3d at 234 (explaining that *Twombly*'s pleading standard). These claims will thus survive.

**Intentional Infliction of Emotional Distress**

In Count IX, Handy asserts a claim for intentional infliction of emotional distress against the Individual Defendants under Pennsylvania state law. This claim stems from the search and seizure and alleged defamation. To state a claim, a plaintiff must allege that the defendant's conduct was "(1) extreme and outrageous; (2) intentional or reckless; and (3) caused severe emotional distress." *Hargraves v. City of Phila.*, No. 05-4759, 2007 WL 1276937, at *3 (E.D. Pa. Apr. 26, 2007). The conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible grounds of decency and to be regarded as atrocious and

utterly intolerable in a civilized community." *Chuy v. Philadelphia Eagles Football Club*, 595 F. 2d 1265, 1273 (3d Cir. 1979). The alleged conduct in the Amended Complaint—including the search and seizure and alleged defamation, libel, and slander—does not rise to the degree required by Pennsylvania law. *See, e.g.*, *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 428 (E.D. Pa. 2000) (finding allegations that the defendants "leaked" a letter to the press did not rise to the level of outrageousness required for intentional infliction of emotional distress); *Elec. Lab. Supply Co. v. Motorola, Inc.*, No. 88-4494, 1989 WL 113127, at *10-11 (E.D. Pa. Sept. 20, 1989) (finding allegations that the defendants unlawfully searched and seized a plaintiff's property after being authorized to do so by court order did not rise to the level of outrageousness required for intentional infliction of emotional distress). Handy has not alleged any conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible grounds of decency." *See Chuy*, at 595 F. 2d at 1273. This claim against the Individual Defendants will be dismissed with prejudice as amendment would be futile. *See Phillips*, 515 F.3d at 245.

**Conspiracy**

Finally, Handy alleges a conspiracy claim against the Individual Defendants, although it is unclear whether his claim is pursuant to § 1983 or Pennsylvania law. To allege a conspiracy claim under § 1983, "a plaintiff must [allege] that persons acting under color of state law conspired to deprive him of a federal protected right." *Ashton v. City of Uniontown*, 459 F. App'x 185, 191 (3d Cir. 2012) (citing *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999)). In Pennsylvania, "to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual

legal damage." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (citing *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997)); *see also Skipworth by Williams v. Lead Indus. Ass'n, Inc.*, 690 A.2d 169, 174 (Pa. 1997) (discussing elements of civil conspiracy in Pennsylvania and explaining "proof of malice, or an intent to injure, is essential in proof of conspiracy").

Although Handy alleges the Individual Defendants "reached an understanding, engaged in a course of conduct and otherwise jointly acted and/or conspired among and between themselves" to slur Handy and subject him and his family to an unlawful search and seizure and intentionally inflict emotional distress on him, Am. Compl. ¶ 255, he has nonetheless failed to allege any facts to support his allegations. His generalized, conclusory allegations are insufficient to state a conspiracy claim under federal or state law. *See also Bush v. Adams*, No. 07-4936, 2009 WL 197550, at *6 (E.D. Pa. Jan. 27, 2009) (dismissing a conspiracy claim where the complaint only alleged bare allegations of the defendants' common membership in an organization without facts discussing the particular relationship between those defendants). Because any amendment to these claims would be futile, they will be dismissed without leave to amend. *See Phillips*, 515 F.3d at 245.

**CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss Handy's Amended Complaint will be granted in part and denied in part. The motion is denied as to Handy's Fourth Amendment search and seizure claim and state law defamation, libel, and slander claims against the Individual Defendants. The motion is granted as to all other claims in Handy's Amended Complaint: (1) Handy's Fourth Amendment search and seizure *Monell* claim against the City is dismissed without prejudice to Handy's right to seek leave to amend in the event discovery

17

reveals a basis for *Monell* liability; and (2) all of the remaining claims are dismissed with prejudice.

An appropriate order follows.

BY THE COURT:


/s/     Juan R. Sánchez
Juan R. Sánchez, C.J.