IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RODNEY HANDY, JR.,                    :
                                      :        CIVIL ACTION
                   Plaintiff,         :
                                      :
            vs.                       :        NO:  17-3107
                                      :
LEELONI PALMIERO, et al.,             :
                                      :
                   Defendants.        :

## <u>ORDER</u>

AND NOW, this ___ day of _____, 2019, upon consideration of

Defendants' Motion for Summary Judgment, and Plaintiff's response thereto, it is hereby

ORDERED that the Motion is DENIED.


                                    BY THE COURT:


                                    _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY HANDY, JR., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO:  17-3107 |
| | : | |
| LEELONI PALMIERO, et al., | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff, Rodney Handy, Jr.,

hereby responds to Defendants' Motion for Summary Judgment.  In support of his Response,

Plaintiff submits the accompanying Memorandum of Law.

_____
David B. Sherman, Esquire
Solomon, Sherman & Gabay
1628 JFK Boulevard
8 Penn Center, Suite 2200
Philadelphia, PA  19103
(215)  665-1100

Counsel for Plaintiff, Rodney Handy, Jr.

Dated:   July 29, 2019

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RODNEY HANDY, JR.,                        :
                                          :        CIVIL ACTION
            Plaintiff,                    :
                                          :
      vs.                                 :        NO:  17-3107
                                          :
LEELONI PALMIERO, et al.,                 :
                                          :
            Defendants.                   :

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

David B. Sherman, Esquire
Solomon, Sherman & Gabay
1628 JFK Boulevard
8 Penn Center, Suite 2200
Philadelphia, PA  19103
(215)  665-1100

Counsel for Plaintiff, Rodney Handy, Jr.

Dated:   July 29, 2019

TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................ 1
II.    PROCEDURAL HISTORY .......................................................................... 1
   A.   Defendants' Initial Motion to Dismiss ...................................................... 1
   B.   Plaintiff's Amended Complaint .................................................................. 2
   C.   Defendants' Second Motion to Dismiss ..................................................... 2
   D.   The Court's Initial Scheduling Order ........................................................ 2
   E.   Trial .............................................................................................................. 3
   F.   Defendants' Untimely Answer .................................................................... 3
   G.   Defendants' Motion for Summary Judgment ............................................ 3
   H.   Plaintiff's Motion to Strike ........................................................................ 3
   I.   Matters Pending ........................................................................................... 4
III.   STATEMENT OF FACTS ............................................................................ 4
IV.    STANDARD FOR SUMMARY JUDGMENT .............................................. 9
V.     ARGUMENT .................................................................................................. 10
   A.   Defendants Have Waived The Affirmative Defenses Upon Which They Seek
        Summary Judgment. ................................................................................... 10
   B.   Defendants' Search of Plaintiff's Home Was Conducted Pursuant to An Invalidly
        Issued Warrant And Not On The Basis of Consent. ............................... 10
   C.   Assuming, *Arguendo,* That Defendants Have Not Waived Their Late-Filed
        Affirmative Defenses, Defendants Palmiero And Baldomero Are Not Entitled To Qualified
        Immunity Because They Violated Long-Standing And Fundamental Principles Of Fourth
        Amendment Law. ......................................................................................... 15
VI.    CONCLUSION ............................................................................................... 15

I.    INTRODUCTION

Defendants seek summary judgment on four (4) principal grounds.

First, Defendants argue that Plaintiff has not "stated a claim" against Detective John Palmiero because his first name is incorrectly stated in the caption of the case.[1]  (Motion, p. 5). Second, notwithstanding the invalidly-issued search warrant for Plaintiff's house, the search was nevertheless legal because Plaintiff's sick, elderly mother allegedly consented to the search. (*Id.*, pp. 6, 7).   Third, Defendants Palmiero and Baldomero are entitled to qualified immunity. (*Id.*, pp. 12, 13).  Finally, Defendants assert that Plaintiff's state law claims for libel, slander and defamation are time-barred.  (*Id.*, pp. 12-13).[2]

II.   PROCEDURAL HISTORY

Plaintiff had initially filed suit against Defendants in the Philadelphia Court of Common Pleas on May 22, 2017.  (ECF 1).  On July 12, 2017, Defendants removed the case to the United States District Court for the Eastern District of Pennsylvania.  *Id.*

A.  Defendants' Initial Motion to Dismiss

On August 21, 2017, Defendants filed a Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF 3).  A true and correct copy of the Motion is attached as Exhibit A to Plaintiff's Motion to Strike and incorporated herein by reference.

---

[1]  Defendants cite no caselaw or other legal precedent in support of this argument.  Moreover, it is undisputed that Detective Palmiero was the lead investigator on the case and the person who applied for and obtained the search warrants at issue.

[2]  Plaintiff disputes Defendants' Statement of Undisputed Material Facts, which is attached to Defendants' Motion. The Statement, for the most part, incorporates portions of deposition testimony which, of course, is subject to cross-examination at trial and certain documents which speak for themselves.

On September 5, 2017, Plaintiff filed a Response in Opposition to said Motion. (ECF 3, 4).[3]   On October 17, 2017, the Court granted Defendants' Motion to Dismiss and dismissed all of Plaintiff's claims without prejudice.  The Court granted Plaintiff leave to file an amended complaint. (ECF 11).

B.  Plaintiff's Amended Complaint

On November 16, 2017, Plaintiff filed his First Amended Complaint against Defendants. (ECF 12).  A true and correct copy of Plaintiff's First Amended Complaint (the "Amended Complaint") is attached as Exhibit B to Plaintiff's Motion to Strike and incorporated herein by reference.

C.  Defendants' Second Motion to Dismiss

On November 30, 2017, Defendants filed their second Rule 12(b)(6) Motion and Memorandum of Law in support thereof (ECF 14,15).  True and correct copies of the Motion and Memorandum are attached as Exhibit C to Plaintiff's Motion to Strike and incorporated herein by reference.  By Order entered on September 28, 2018, the Motion was granted in part and denied in part.  (ECF 18).

D.  The Court's Initial Scheduling Order

The Court entered its initial scheduling order on October 2, 2018.  (ECF 19).[4]  Pursuant to its Second Amended Scheduling Order, entered on March 21, 2019, the Court directed that dispositive motions were to be filed by July 3, 2019.  (ECF 21).

---

[3] Oral argument on Defendants' Motion was held on September 28, 2017. (ECF 10).

[4] The pleadings were closed at this point.

E.  Trial

Trial is scheduled for August 12, 2019.

F.  Defendants' Untimely Answer

Defendants, on July 2, 2019, nearly ten (10) months after their *second* Rule 12(b)(6)

Motion had been decided, filed their Answer with Affirmative Defense to Plaintiff's Amended

Complaint.  (ECF 22).  A true and correct copy of the Answer is attached as Exhibit D to

Plaintiff's Motion to Strike and incorporated herein by reference.

Defendants' Answer sets forth (6) affirmative defenses, *i.e.,* a) governmental immunity,

b) qualified immunity, c) statute of limitation, d) failure to state a claim, e) "reasonableness" and

f) causation.  Except for its defense of failure to state a claim, *none* of these defenses had been

previously raised by Defendants in this case.[5]

G.  Defendants' Motion for Summary Judgment

On July 2, 2019, Defendants filed their Motion for Summary Judgment. (ECF 23).

Defendants seek summary judgment against Plaintiff based, in part, on these untimely

affirmative defenses.

H.  Plaintiff's Motion to Strike

On July 16, 2019, Plaintiff filed a Motion to Strike Defendants' Answer with Affirmative

Defenses, in its entirety, and those portions of Defendants' Motion for Summary Judgment

asserting said Affirmative Defenses, and a Memorandum of Law in support thereof (collectively,

the "Motion to Strike"). (ECF 23).  A true and correct copy of the Motion to Strike is attached

hereto as Exhibit A and incorporated herein by reference.

---

[5] Defendants' First Affirmative Defense, *i.e.,* failure to state a claim is, given Defendants' previously-filed Rule 12(b)(6) motions, redundant, and, therefore, it should be stricken pursuant to Fed..R.Civ. P. 12(f).

I.   <u>Matters Pending</u>

There are two (2) motions pending before the Court.  First, Defendants' Motion for Summary Judgment.  Second, Plaintiff's Motion to Strike Defendants' Answer With Affirmative Defenses And Those Portions Of Their Motion For Summary Judgment Asserting Said Affirmative Defenses.

III.   <u>STATEMENT OF FACTS</u>

This is an action that was brought by Plaintiff, an African-American, to vindicate, *inter alia*, profound deprivations of his constitutional rights caused by, *inter alia,* the individual police officers named as Defendants in this action (hereinafter, collectively referred to as the "Defendants" or "Police Officer Defendants"), resulting in the injuries and damages that are more fully described in the Amended Complaint.

<b><u>Plaintiff's Clearly Established Constitutional Rights</u></b>

At the time of the events that are described, at length, in his Amended Complaint, Plaintiff had, *inter alia,* the following clearly-established constitutional rights:

   (a) the right to be secure in his person from unreasonable seizure through excessive force under the Fourth Amendment (Am. Compl. ¶ 199(a));

   (b) the right to bodily integrity and to be free from excessive force by law enforcement under the Fourteenth Amendment; (Am. Compl. ¶ 199(b));

   (c) the right to exercise his constitutional rights of free speech under the First Amendment without retaliation (Am. Compl. ¶ 199(c)); and

   (d) the right to be secure in his person, house,, papers and effects against unreasonable search and seizure (Am. Compl. ¶ 183).

<b><u>The Shooting of Plaintiff</u></b>

On or about May 23, 2015, Plaintiff was a business invitee and patron of the pub/tavern/bar/nightclub known as the Pasa La Hookah Lounge and located at 6747 Castor Avenue, Philadelphia, PA  19149 (hereinafter, the "Nightclub").  (Am. Compl., ¶ 34).  Plaintiff

4

was attacked, assaulted and shot by one or more business invitees and patrons of the Nightclub. (*Id.* ¶ 35).  Defendants transported Plaintiff directly from the crime scene to the hospital.  (*Id.*, ¶ 36).[6]

A videotape of the incident was taken by the Nightclub. (*Id.*, ¶ 37).  (Exh. B, p. 33). Several witnesses had observed the incident.  (*Id.*, ¶ 38).  After conducting a cursory investigation, Defendants made no real attempt to apprehend the person or persons who shot Plaintiff.  (*Id.*, ¶¶ 39,40).

Plaintiff is an upstanding citizen.  He has no criminal record.  (*Id.*, ¶ 41)

Plaintiff is a graduate of the Penn State University where he excelled as a scholar athlete. (*Id.*, ¶ 42).  His father is a retired Captain in the Philadelphia Police Department.

### Defendants' Libel, Slander and Defamation of Plaintiff

An article regarding the assault and shooting of Plaintiff was published in *The Philadelphia Daily News* on, upon information and belief,  May 26, 2015.  (*Id.*, ¶ 43).[7]  One or more of the Defendants had advised *The Philadelphia Daily News*, and other news organizations, that:

> a)  Plaintiff's gunshot wounds were self-inflicted. (Am. Compl., ¶ 44);
>
> b)  Plaintiff, who had been shot, and, as a result thereof, was suffering great pain and anguish, was "uncooperative" with Defendants. (Am. Compl., ¶ 50);

---

[6] It is undisputed that Plaintiff remained in the hospital for several weeks after he had been shot.  Obviously, Plaintiff had no opportunity to return to his home (to "stash" the gun that, according to Detective Palmiero, he used to shoot himself) before he had recovered sufficiently from his wounes to be discharged.

[7] Defendants expressly *deny* that the article was published on May 26, 2015.  *See* Defendants' Responses and Objections to Plaintiff's First Set of Requests for Admissions, a true and correct copy of which is attached as Exhibit F to Plaintiff's Motion to Strike. ¶ 15.  Therefore, a genuine issue of material fact exists regarding the date on which the article was published, thereby precluding the grant of summary judgment.

c)   that certain guns, ammunition and bullet-proof vests were found as a result of Defendants' (unlawful) search of Plaintiff's residence and that said items belonged to Plaintiff. (Am. Compl., ¶ 56); and

d)   a "green-weedy substance" had been found in the emergency room where Plaintiff (and many other patients) had been treated for his gunshot wounds and that said item belonged to Plaintiff. (Am. Compl., ¶ 62).

Each of the foregoing statements was patently (and outrageously) false.

Moreover, at the time that the statements were made, each of the Defendants knew that the statements were untrue. These false statements, *inter alia*, libeled, slandered and defamed Plaintiff and thereby injured a constitutionally-protected interest in his reputation. *See* PA. CONST. ART. 1, § 1.

In fact, Plaintiff contends that, because these statements were so utterly baseless, the only inference that can be reasonably drawn therefrom is that one or more of the Police Officer Defendants made the statements with the specific intent to embarrass, humiliate and slur Plaintiff, and brand him as being mentally-ill and a criminal, and to harm, damage and otherwise impugn his character, reputation and prospects for future employment and advancement.[8]

Plaintiff further contends that these statements were made in retaliation for Plaintiff's false arrest and malicious beating in 2012 (and his successful lawsuit filed in 2014 arising therefrom), as is more fully discussed in the Amended Complaint.  (Am. Compl., ¶¶ 148-168).

---

[8] Under the Pennsylvania Constitution, a person's reputation alone is an interest protected by the Constitution.

## **Plaintiff Was The Victim of Various Crimes**

It bears repeating that Plaintiff was the victim of various crimes.  It is undisputed that he was attacked, assaulted and shot.  (Am. Compl.,¶ 35). Yet, Defendants, in essence, treated Plaintiff as if he had committed a crime.

In this regard, the Sergeant in charge of the case, Defendant Baldomero, testified as follows:

> A. *What I do is I went and served the search warrant with Detective Palmiero.*
> Q.  But what did you do in terms of interviews, evaluation, investigation?
> A.  I don't to interviews.
> Q.  So did you do anything for the formulation of this search warrant in this case?
> A.  That would be Detective Palmiero.
>
> ***
>
> A.  The only place I went was to the scene.
> Q.  Why did you do that?
> A.  To check for video. And we went the following morning, I went with Detective Palmiero, out the following morning to see any type of video cameras, *and he did recover a video, which was seen* – which I never got to see until a couple days later.
> Q.  And did you that video?
> A.  I did see it, but I don't really remember.  I just remember, I guess it would be him, *laying on the ground and got shot on the foot.*
> Q.  Did you come into possession of that video?
> A.  I didn't come into possession of it was already in the system.  *It was basically put on YouTube to see if we can get an idea of the shooter.*
> Q.  Who puts it on YouTube?
> A.  It would be our video people.[9]  (Emphasis added).

Exh. B, p. 32-33.

---

[9] A true and correct copy of the transcript of Sergeant Baldomero's deposition is attached hereto as Exhibit B and incorporated herein by reference.

Instead of making every effort to apprehend and arrest the person or persons who attacked and shot Plaintiff, Defendants, because of his prior lawsuit against the City, chose to viciously slur Plaintiff and brand him as set forth in the newspaper article described above.[10] And, Defendants attempted to obtain a search warrant for Plaintiff's home, even though they (apparently) knew that he had been shot at the Nightclub.

Notably, Defendants never arrested Plaintiff or filed criminal charges against him for any of the alleged "crimes" that are described in the article which was published in *The Philadelphia Daily News*.

### Defendants' Illegal Search and Seizure of Plaintiff's Residence

Notwithstanding having watched the videotape which showed that Plaintiff had been shot at the crime scene, Defendants searched Plaintiff's residence on May 24, 2012 and seized various items of personal property. However, for the reasons that are discussed below, the search of Plaintiff's residence was unlawful and violative of the Fourth Amendment.

Defendants (initially) argued that the search of Plaintiff's residence was "valid" simply because the search warrant application had been signed by a magistrate judge.

Now, on the eve of trial, Defendants assert that Plaintiff's home was searched "pursuant to consent." (Motion, p. 6). However, it is dispositive of the issue that Defendants have not produced a shred of evidence that would establish that the search warrant was issued pursuant to an affidavit of probable cause or otherwise based upon a finding of probable cause. To the

---

[10] Defendant Palmiero testified that he was aware of Plaintiff's prior lawsuit against the City and the Philadelphia Police Department. Exh. C, p 35. A true and correct copy of the transcript of Detective Palmiero's deposition is attached hereto as Exhibit C and incorporated herein by reference.

contrary, the "four corners" of the search warrant itself establishes beyond any doubt that it was issued without an affirmative probable cause having been submitted to or reviewed by an independent arbiter.[11]

IV.     STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The inquiry performed is the threshold inquiry of determining whether there is the need of a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party must show that there is no "genuine issue of material fact for trial." *Id.* at 256.

The nonmoving party then bears the burden of demonstrating the existence of a genuine issue for trial beyond the pleadings. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his or her] case, and on which [he or she] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citation omitted).

---

[11] Faced with this reality, Defendants, now, for the first time, argue that they had "consent" to search Plaintiff's home. However, the Court has already found that the search was conducted pursuant to a "signed search warrant application." Memorandum Opinion, p. 13 ). (ECF 17). Further, Sergeant Baldomero testified that he served the warrant and Detective Palmiero testified that Plaintiff's grandfather had reviewed the warrant. Exh. B, p. 32). (Exh. C, p. 112).

The evidence of record must be construed in the light most favorable to the non-moving party. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 n.8 (3d Cir. 2009).

In cases that turn on credibility determinations, such as the case at hand, summary judgment is inappropriate. *Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.,* 10 F.3d 144 (3d Cir. 1993).[12]

V.   ARGUMENT

A.   Defendants Have Waived The Affirmative Defenses Upon Which They Seek Summary Judgment.

Defendants argue in their Motion for Summary Judgment, *inter alia,* that Plaintiff's state law claims for libel, slander and defamation are barred by the statute of limitations.  (Motion, pp. 12-13).

However, as is set forth at length in Plaintiff's Motion to Strike, Defendants have waived their right to assert that Plaintiff's state law claims are untimely or that any of the Defendants are entitled to governmental and/or qualified immunity.[13]

B.   Defendants' Search of Plaintiff's Home Was Conducted Pursuant to An Invalidly-Issued Warrant And Not On The Basis of Consent.

The search warrant that (ostensibly) authorized law enforcement officers to search Plaintiff's residence was issued without a) a statement of probable cause having been attached to or stated in the warrant application, and b) probable cause otherwise having been established.  A

---

[12] The credibility of Detective Palmiero, the lead detective on the case, is a critical issue for the jury to determine thereby making a grant of summary judgment wholly inappropriate.  His initial assessment of the crime scene, *i.e.,* that Plaintiff had shot himself is, to say the least, highly questionable.  Likewise, his assumption that the gun that (according to Detective Palmiero) Plaintiff used to shoot himself (at the crime scene) had been magically transported to Plaintiff's home (while Plaintiff was hospitalized) is extremely suspect.

[13] In the interest of brevity on this particular argument, Plaintiff respectfully directs the Court's attention to his Motion to Strike.  *See* Exh. A.

true and correct copy of the Search Warrant Application for Plaintiff's home is attached hereto as Exhibit D and incorporated herein by reference.[14]

The Fourth Amendment protects against unreasonable searches and seizures and directs that no warrant shall be issued without "probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." *United States v. Tracey,* 597 F.3d 140, 146 (3d Cir. 2010) (Internal quotation marks and citation omitted). "Probable cause exists to support the issuance of a search warrant if, based on a totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Sherwood v. Mulvhill,* 113 F. 3d 396, 401 (3d Cir. 1997) (internal quotation marks and citation omitted). "Typically, the existence of probable cause in a § 1983 action is a question of fact." *Id.*

The exact procedure necessary to obtain a warrant based upon probable cause was plainly stated by the Third Circuit in *Dempsey v. Buckwell Univ.* 834 F.2d 457 (2016):

> An officer seeking a warrant on the basis of probable cause must follow a two-step process.  First, the officer swears to an affidavit containing a summary of the events that she believes give rise to probable cause. …  Second, the officer presents the affidavit to a neutral magistrate, who conducts his own independent review of the evidence to determine whether it does, in fact, establish probable cause, and if so, issues a warrant.

834 F.3d at 469-470.

The Court concluded:

---

[14] It is beyond dispute that the face of the warrant application does not contain a statement of probable cause. The language on the first page of the application suggests that some type of attachment was meant to be incorporated with the application.  However, Defendants did not produce the (allegedly) intended attachment in discovery and it was not scanned into the computer system for the Philadelphia Police Department.  (Motion, pp. 9, 10).

> Nevertheless, in reviewing probable cause determinations made by
> law enforcement, the role of the courts is not that of the much-
> maligned 'Monday morning quarterback' whose critiques are made
> possible only by the benefits of hindsight.  Rather, federal courts
> review the record to ensure that the proper procedure for
> determining probable cause were followed.

834 F.2d at 469-470.

Although the search of Plaintiff's home was conducted pursuant to a "signed" search

warrant application, the warrant was issued without *both* the requisite affidavit of probable cause

having been provided to the magistrate judge and the existence of probable cause having been

otherwise established.

In this regard, Detective Palmiero testified as follows:

> **By Mr. Sherman:**
> Q.  Is there anything in Handy 42 that you say represents the
> substance of the material presented to Judge Devlin (sic) for
> the house search?
> A.   The substance, the continuation appears to be not in this
> packet.  But the cover page for where we were searching and
> the magistrate signature and authorization along with the
> district attorney's approval is on it.

Exh. C, p. 114, 12-24; p. 115 1-7

When Detective Palmiero was asked by his counsel whether any magistrate (who is asked

to issue a search warrant) has access to any other documents or information (other than what is

set forth in an affidavit of probable cause), he responded as follows:

> **By Ms. Zabel:**
> Q. So looking now to the left side of that paper, it looks like it's
> cut off.  But can you tell me what that says to the best of your
> knowledge?
> A.   "Approved ADA Harrell, by ADA Harrell 5/24/2015, 10:30
> a.m."
> Q.  Is that your handwriting?
> A.   That is my handwriting.

> Q.  When you executed or handed the application for search
> warrant to a magistrate, is the magistrate able to access the
> investigating documents that are uploaded on PIN?
> A.  No.
> Q. No?
> A. No.
> Q.  Okay.
> A.  Are they able to?  Actually I'm not sure if they actually have
> that capability but, no, they normally don't.  *They go on what's on
> the affidavit.*
> Q.  Okay.  That's all I have.  Thank you.  (Emphasis added).

Exh. C., p. 140: 1-22

In this case, it is undisputed that an affidavit of probable cause was never submitted to the

magistrate judge who (nevertheless) signed the warrant to search Plaintiff's home.  To the

contrary, it was simply "rubber-stamped" without any "facts and circumstances" having been

presented by Defendants to the judge.

While expounding upon and extolling the virtues and critical importance of the "warrant

application process," Defendants admit that said process was not followed in this case with

respect to the search of Plaintiff's home:

> Here, Magistrate Judge Devlin independently reviewed the
> evidence and determined that probable cause existed to execute a
> search warrant of Plaintiff's car.  Thus, the search warrant is
> presumptively valid and the 'protection afforded by magistrate's
> review' is intact.

Motion, p. 9.

But, as to the warrant to search Plaintiff's residence, Defendants engage in a case of

"what if:"

> The second search warrant, for Plaintiff's residence, was also
> approved by ADA Harrell and a detached, neutral magistrate,
> Judge Bedford.  *While the affidavit of probable cause attached to
> the warrant application was not properly scanned into the police
> system and cannot be located presently*, Detective Palmiero
> explained that this affidavit was 'identical' to the one he submitted

13

for the car search warrant. The exact same facts and circumstances
that existed at the time of the search of the car clearly applied to
the search of the house, less than twenty-four hours later.
Furthermore, a separate, neutral magistrate judge found that
probable cause existed and signed the search warrant. (Emphasis
added).

Motion, pp. 9, 10.

Remarkably, Defendants now ask this Court to *assume* that had the magistrate judge

actually reviewed the affidavit of probable cause that was submitted to search Plaintiff's

*automobile* (which was located *at the crime scene)*, or something "similar" thereto, he or she

would have concluded (on those "nearly identical" facts) that probable cause existed to search

*Plaintiff's home*. This is hardly in conformity with the process set forth in *Dempsey, supra.*

As to the physical condition of the person who allegedly "consented" to the search of

Plaintiff's residence, Detective Palmiero testified as follows:

> **By Mr. Sherman:**
> Q. Let's talk about the search and seizure, your warrant, so we can
> get you out of here.
>         Did you search any cars in connection with this --  his
> house?
> A.  I'm sorry?
> B.  Q.  Did you do the search and seizure at the house?
> C.  A.  I did search the house, yes.
> D.  Q.  Do you remember who was there?
> E.  A.  Sergeant Baldomero and his grandfather and then a woman
>         that was less mobile than I guess she would want to be.  I think
>         she had some type of oxygen tank that was in the living room.
>         I *don't think her health was great.* (Emphasis added).

Exh. C, p. 109, 9-24.

In any event, Defendants did not see fit to depose Plaintiff's mother on this critical issue.

Rather, it relies on a hearsay statement made by Plaintiff, who was hospitalized when the home

was searched. (Motion, p. 6).

C. Assuming, *Arguendo,* That Defendants Have Not Waived Their Late-Filed Affirmative Defenses, Defendants Palmiero And Baldomero Are Not Entitled To Qualified Immunity Because They Violated Long-Standing And Fundamental Principles Of Fourth Amendment Law.

Defendants also move for summary judgment on the basis that Defendants Palmiero and Balomero are entitled to qualified immunity. (Motion, pp. 11, 12). This never-before-raised argument is without merit.

Simply put, Defendants Palmiero and Baldomero, in searching Plaintiff's home without having submitted an affidavit of probable cause to a neutral magistrate judge for an independent review, violated long-standing and fundamental principles of Fourth Amendment law.

To suggest, as Defendants do, that a "reasonable" police officer would believe that he or she could legally search a person's home without having sworn out an affidavit of probable cause, and subjected same to an independent review by a neutral judge, is, frankly, ludicrous.

VI.   CONCLUSION

For all of the foregoing reasons, Defendants' Motion for Summary Judgment should be denied in its entirety.

Respectfully submitted,

_____
David B. Sherman, Esquire (I.D. No 36437)
Solomon, Sherman & Gabay
1628 JFK Boulevard
8 Penn Center, Suite 2200
Philadelphia, PA  19103
(215)  665-1100

Counsel for Plaintiff, Rodney Handy, Jr.

Dated:   July 29, 2019

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 29, 2019, I caused true and correct copies of Plaintiff's Response to Defendants' Motion for Summary Judgment and Memorandum of Law in support thereof were electronically filed with the Court.

_____
David B. Sherman, Esquire