IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY HANDY, JR. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 17-3107 |
| | : | |
| LEELONI PALMIERO, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                          **August 22, 2019**

On May 23, 2015, Plaintiff Rodney Handy, Jr. was shot outside the Pasa La Hookah nightclub in Philadelphia, Pennsylvania. Handy alleges that, rather than search for the real shooter, Defendants, Detective John Palmiero [1] and Sergeant Ubirajara Baldomero of the Philadelphia Police Department (the Department), targeted him as a suspect in retaliation for a prior lawsuit he filed against the Department.[2] The campaign against Handy allegedly reached its zenith when Defendants searched Handy's home, purportedly in violation of his Fourth Amendment rights, and smeared him in the Philadelphia Daily News, purportedly in violation of state law. Before the Court are Defendants' motion for summary judgment (Document 23) and Handy's motions to strike Defendants' Answer to his Amended Complaint (Document 24) and Defendants' opposition to Handy's motions to strike (Document 25). The Court will grant summary judgment in Defendants' favor because they are entitled to qualified immunity, and the Court lacks

---

[1] The caption of the Amended Complaint misidentifies Defendant Palmiero as Leeloni Palmiero. Once Handy discovered this was a mistake, he should have moved to amend the caption to reflect the identity of the proper defendant under the "misnomer rule." *See Zameska v. Seguors Ing Commercial America, S.A. de C.V.*, No. 04-1895, 2005 WL 615749, at *1 (E.D. Pa. Mar. 15, 2015) (noting the "misnomer rule" operates "where plaintiff has actually sued and served the correct party but has mistakenly sued the wrong name of the defendant in the original captions"). Nevertheless, to the extent the Court refers to Palmiero by first name, it will use the correct one.

[2] At oral argument, Handy's counsel conceded that summary judgment was appropriate with respect to his claims against all remaining Defendants, Detectives Hagy, Horger, and Sullivan.

supplemental jurisdiction to consider Handy's state claims. Moreover, in light of the Court's decision on the merits, the Court will dismiss Handy's motions to strike as moot.

**FACTS[3]**

The events at issue took place in late May, 2015. At around 6:25 a.m. on the morning of May 23, 2015, Plaintiff Rodney Handy, Jr. was discovered by police hiding in his white Toyota Avalon near the Pasa La Hookah nightclub in Philadelphia, Pennsylvania, *see* Mot. for Summ. J. Ex. I at 44:2, 119:13-15, with blood on his face and streaked down the side of the vehicle, *id*. Ex. C at 1. Handy told officers that he had been shot in his left foot but claimed not to have seen who shot him and refused to provide any additional information. *Id.*; *see also id.* Ex. A at 1 (describing Handy as "uncooperative"); *id.* Ex. B at 1 (same). Handy was then transported to the Frankford Torresdale Hospital for treatment. *Id.* Ex. C at 1. About an hour and a half later, Palmiero, a detective for the Department, logged six .40 caliber fired cartridge casings from the scene of Handy's shooting as evidence. *Id.* Ex. E at 1.

At approximately 8:30 a.m. on the morning of May 23, Palmiero interviewed Handy at the hospital. During the interview, Handy claimed that he "did not remember" where he was when he

---

[3] The facts are taken from the exhibits to Defendants' motion for summary judgment and Handy's opposition, as well as Handy's Motion to Strike Defendants' Answer. Handy failed to comply with his procedural obligations vis-à-vis summary judgment. Specifically, he did not file a responsive statement of undisputed material facts as required by Paragraph II.E.7 of the Court's Policies & Procedures (his attempt to do so did not respond with the requisite paragraph-by-paragraph admissions or denials), nor did he consistently provide pinpoint citations to the record to support his averments, in violation of Federal Rule of Civil Procedure 56(c). Thus, to the extent Defendants' contentions are supported by the record and Handy has failed to support his countervailing position with a citation to the record, the Court will consider such facts to be undisputed. *See* Fed. R. Civ. P. 56(e)(2); *see also Atkins v. Borough of Phoenixville*, 336 F. Supp. 3d 511, 515 (E.D. Pa. 2018) (considering parties' factual contentions as undisputed where opponent's briefing lacked citations or a statement of undisputed facts). As Defendants point out, "it is the attorney's job (not the court's) to closely examine the record to determine if sufficient issues of fact exist to warrant a trial." *Russell v. City of Philadelphia*, 698 F. App'x 709, 709 (3d Cir. 2017).

was shot and disclaimed any knowledge of the identity of his assailant. *Id*. Ex. G at 1. Handy also told Palmiero that he legally owned a .40 caliber firearm, which he kept locked in his house *Id.* at 2. When Palmiero asked Handy whether he had any weapons inside the white Avalon, Handy stated, "not that I know of." *Id.*

At 1:51 p.m., Magisterial District Judge Kevin Devlin signed a search warrant prepared by Palmiero for Handy's Toyota Avalon, which identified the evidence to be searched and seized as "proof of ownership, firearms, ballistic evidence, and any other item that may be of evidence value or assist with the investigation." *Id*. Ex. J at 1. The warrant was accompanied by a typed affidavit of probable cause. *Id*. Ex. F at 1. In pertinent part, the affidavit claimed that probable cause existed to search Handy's car

> [Due] to the fact that the complainant was uncooperative with Police during this investigation, his injuries are consistent with being involved in a physical fight, the gunshot wound he sustained is consistent with a self[-]inflicted wound along with the fact that the caliber of the gun the complainant owns matches the same caliber of [fired cartridge casings] recovered from the scene.

*Id.* Handwritten on the affidavit is a notation: "Approved ADA Harrell 5/23/15 12:24 p.m." *Id.* The warrant was served at 2:30 p.m., and two cell phones and a photo identification were recovered. *Id*. Ex. J at 1.

The following day, on May 24, 2015, Palmiero sought a warrant to search Handy's home. *See Id*. Ex. K. The warrant indicates that it was approved by ADA Harrell at 10:32 a.m. that morning, and signed by a Magistrate Judge Bedford at approximately 11:00 a.m. *Id.* With respect to probable cause, the warrant directs the issuing authority to "see continuation for facts and circumstances."[4] A search was executed pursuant to the warrant by a team of officers,[5] which

---

[4] As discussed below, the parties dispute whether such a continuation existed.

[5] Defendants also claim that the search was consensual based on a portion of Handy's deposition in which he states that, although he was still hospitalized, his mother, sister, and grandfather told

3

included both Palmiero and Sergeant Baldomero, not long thereafter, and several items were recovered. *Id.* (noting the recovery of a "40 cal walter handgun," "2 loaded magazines," "1 box ammunition," "2 bullet proof vests," and a "gun purchase receipt").

On May 26, 2015, the Philadelphia Daily News published an article recounting the events described above.[6] The article also indicated that "[p]olice . . . retrieved two plastic jars containing

---

him that his sick grandmother told the police that they could search the house. *See* Mot. for Summ. J. Ex. H at 45:14-46:24. The Court's finding that the search was supported by a warrant and affidavit of probable cause obviates the need to discuss the adequacy of the consent, which Handy challenges. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973) (noting "the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force"). It suffices to say that the Court is skeptical that it would have granted summary judgment on this basis in the absence of its finding on the warrant issue, given that (1) Defendants have not explained how Handy's grandmother's statement, transmitted to Handy through a third party out of court, could be admissible at trial, *Robinson v. Hartzell Propeller Inc.*, 326 F. Supp. 2d 631, 645 (E.D. Pa. 2004) ("Evidence submitted with a motion for summary judgment must be in a form as would be admissible and trial and thus must be reducible to admissible evidence." (quotation omitted)); and, (2) Handy's circuitous deposition testimony is the only evidence Defendants were able to muster to support their position as Defendants did not depose any of Handy's relatives who were home at the time, elicit testimony at Palmiero or Baldomero's depositions that the grandmother consented to the search, or even offer affidavits from Palmiero or Baldomero attesting to such consent after Handy's concession, *see Gelover v. Lockheed Martin*, 971 F. Supp. 180, 181 (E.D. Pa. 1997) ("If reasonable minds can differ as to the import of proffered evidence that speaks to an issue of material fact, summary judgment should not be granted.").

[6] The parties' written submissions suggested the existence of a dispute of fact as to the publication date of the Philadelphia Daily News article, which was resolved at oral argument. The dispute appears to have stemmed from Defendants' apparent failure to comply with Federal Rule of Civil Procedure 36, which governs requests for admissions. Where, as here, the party responding to a request for admission asserts a lack of knowledge, it must state "that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4). Here, defense counsel made no such affirmation. Indeed, counsel merely claimed they could not answer because they could not see the date on the *print* version of the article. That was not the end of counsel's obligation, however, and, accordingly, counsel did not comply with Rule 36(a)(4).

The Court suspects defense counsel did not include any affirmation as to a reasonable investigation because none of the three of them undertook any investigation at all. The Court believes this to be the case because it was able to quickly locate the digital version of the article—which clearly indicates that it was published on May 26, 2015. Had defense counsel fulfilled their obligation, the Court has little doubt they would have been able to find the article with equal

a 'green weedy substance' that were left behind in the emergency room." *Id*. Ex. L at 1. According to the article, "[t]he jars were left inside the room where Handy was treated." *Id.*

Ultimately, Handy was cleared of any wrongdoing. On May 22, 2017, he filed this action in the Philadelphia Court of Common Pleas. Defendants filed a notice of removal in this Court on July 12, 2017. Defendants filed a motion to dismiss the Complaint, which the Court granted on October 17, 2017. *See* Order, Oct. 17, 2017, ECF No. 11. On November 16, 2017, Handy filed the Amended Complaint, which Defendants, again, moved to dismiss. The Court granted that motion in part, allowing only Handy's Fourth Amendment, defamation, slander, and libel claims to proceed. *See* Order, Sept. 28, 2018, ECF No. 18.

On July 2, 2019, Defendants contemporaneously answered Handy's Amended Complaint and moved for summary judgment. *See* Answer, July 2, 2019, ECF No. 22; Mot. for Summ. J., July 2, 2019, ECF No. 23. On July 16, 2019, Handy moved to strike Defendants' Answer, given that it was filed well-beyond the timeline established by Rule 12(a)(4)(A) and no leave had been sought pursuant to Rule 6(b). *See* Mot. to Strike Answer, July 16, 2019, ECF No. 24. On August 9, 2019, Handy filed a second motion to strike, this time pertaining to Defendants' opposition to his motion to strike their Answer. *See* Mot. to Strike Opp'n to Mot. to Strike Answer, Aug. 9, 2019, ECF No. 37. All three motions are now before the Court for disposition.

---

alacrity, and thus offered an actual response to the discovery request. *See Inventio AG v. Thssenkrupp Elevator Americas Corp.*, No. 08-874, 2013 WL 12133902, at *2 (D. Del. July 29, 2013) (noting "inherent in Rule 36 is the requirement that the responding party make a good faith effort to obtain information so he can admit or deny the request" (internal quotation marks omitted)). Their lack of diligence with respect to this discovery does not, however, end there. When it became apparent that the article was actually published on May 26, 2015, counsel was obligated by Rule 36(b) to move the Court for leave to amend the errant discovery response. Notwithstanding that they have known for at least six weeks that the article was likely published on May 26, 2015, the date on which they filed their Answer admitting that to be the case, defense counsel has still not moved to amend the discovery response.

**DISCUSSION**

As noted above, only a handful of Handy's claims have advanced beyond the pleading stage: his Fourth Amendment claim pursuant to 42 U.S.C. § 1983 and his state common law claims for defamation, slander, and libel. The Court will grant summary judgment in Defendants' favor because they are entitled to qualified immunity, and, the Court will decline to exercise supplemental jurisdiction over the defamation, slander, and libel claims and dismiss them for lack of subject matter jurisdiction.

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" dispute is one where "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." *Id*. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and internal quotation marks omitted). To defeat summary judgment, "the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex, Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (alteration in original) (citation and internal quotation marks omitted).

The Court begins with Handy's Fourth Amendment claim under 42 U.S.C. § 1983, which creates a federal statutory mechanism for private individuals to vindicate deprivations of their

constitutional rights by actors personally involved in the alleged deprivation.[7] *See Albright v. Oliver*, 510 U.S.C. 266, 271 (1994) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." (internal quotations omitted)); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (noting "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs"). To prevail on his claim, Handy must produce evidence that "a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013). In evaluating a § 1983 claim, a court must first "identify the exact contours of the underlying right said to have been violated." *Id.* at 166 (quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc)). The Court must then "determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Id.*

Defendants' assert Handy's § 1983 Fourth Amendment claim fails on the basis of qualified immunity. The threshold issue is whether Defendants have waived the qualified immunity defense by failing to timely plead qualified immunity in their Answer and raising it in their motion for summary judgment for the first time.

The Court's consideration of the waiver issue requires recounting the specific procedural history of this matter. On September 28, 2018, the Court denied Defendants' motion to dismiss

---

[7] In pertinent part, 42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Handy's Amended Complaint. By rule, this obligated Defendants to file their Answer on or before October 12, 2018. *See* Fed. R. Civ. P. 12(a)(4)(A) (requiring service of a responsive pleading within 14 days "after notice of the court's action" on a Rule 12 motion if "the court denies the motion"). However, because of defense counsels' "calendaring issue," Defendants did not file their Answer until July 2, 2019—more than eight *months* after it was due. *See* Answer, July 2, 2019, ECF No. 22. They also did not file a motion for leave to file so late, or establish excusable neglect for doing so, as is also required by Rule 6. *See* Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."). Based on these procedural violations, Handy asks the Court to strike the Answer in its entirety, including Defendants' qualified immunity affirmative defense. Defendants argue there is no basis to strike their Answer because Handy has not offered any evidence their delay resulted in any prejudice to him.

The Court need not resolve the tardiness issue because qualified immunity may be raised on summary judgment, independent of the filing of an answer.[8] *See Schneyder v. Smith*, 709 F. Supp. 2d 368, 387 (E.D. Pa. 2010) (noting "[a] defendant may raise qualified immunity on the pleadings in a motion to dismiss, on summary judgment, or as an affirmative defense at trial"). The Supreme Court has directed district courts to consider qualified immunity at the "earliest possible stage in the litigation," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Nevertheless, in this

---

[8] The Court's conclusion should not be read to absolve defense counsel of failing to comply with their obligations under the Rules. No good explanation has been provided for how three attorneys could have failed to place the answer deadline on their respective calendars. Nor, is it clear how all three could have failed to research the proper procedural mechanism for filing the late pleading once someone discovered the problem, which was made obvious by the absence of a Rule 6(b) motion.

Circuit, "the defense of qualified immunity is not necessarily waived by a defendant who fails to raise it until the summary judgment stage." *Eddy v. V.I. Water & Power Auth.*, 256 F.3d 204, 210 (3d Cir. 2001); *see also Oliver v. Roquet*, 858 F.3d 180, 188 (3d Cir. 2017) (noting qualified may be raised "even after trial if the plaintiff suffers no prejudice"); *Kleinknect v. Gettysburg Coll.*, 989 F.2d 1360, 1374 (3d Cir. 1993) (declining to find the immunity issue waived "even though a motion for summary judgment is not the most appropriate way to raise a previously unpled defense of immunity"). Rather, a waiver will only be found after the district court assesses whether the defendant demonstrated "a reasonable modicum of diligence in raising the defense" and "whether the plaintiff has been prejudiced by the delay." *Id.*

The Court will not find a waiver because Handy has not alleged prejudice and the Court perceives none on its own.[9] At no point did Handy claim that he was denied the ability to develop a record in opposition to qualified immunity. Moreover, the Court finds that such a claim would likely fail, considering the factual question germane to qualified immunity here, i.e., whether the search of his house was supported by probable cause, is the same factual question raised by the merits of his claim. In other words, the Court is skeptical of Handy's ability to establish prejudice

---

[9] The Court finds that the consideration of diligence does not clearly counsel for or against waiver. On one hand, Defendants filed their motion for summary judgment raising qualified immunity within the time period set forth in the Court's March 21, 2019, Order, thus demonstrating some modicum of diligence at least with respect to their motion and the scheduling order. *See* Second Am. Sched. Order, Mar. 21, 2019, ECF No. 21 (setting July 3, 2019, as the deadline for dispositive motions). On the other hand, as noted, defense counsel: (A) missed the deadline to file their answer by more than eight months; (B) did not follow the established procedure for filing late documents; (C) did not provide an adequate discovery response related to a significant issue in this case; and (D) once it became clear the response was inadequate, did not comply with the procedures for rectifying that error. These lapses reflect a lack of diligence with respect to prosecuting this case, generally. Given these competing conclusions, the Court finds that Defendants' diligence, or lack thereof, does not weigh clearly for or against waiver. *Cf. Adam v. Dillon*, 900 F. Supp. 2d 499, 506-07 (M.D. Pa. 2012) (finding the diligence consideration did not weigh heavily in favor of either party where the court questioned the defendants' diligence in raising qualified immunity, but not their "overall diligence in defending this suit.").

because his claim under the Fourth Amendment and Defendants' claim for immunity turn on the resolution of the same question, an issue for which there appears to have been extensive discovery—the justification and authorization for the search of his home. Moreover, the Court notes that Handy has failed to allege, much less produce evidence suggesting, that Defendants' decision to raise the issue of qualified immunity was due to anything other than their counsels' inattention to detail, and not for some amorphous tactical or strategic advantage. *See Schneyder*, 709 F. Supp. 2d at 387 (noting a court may waive qualified immunity "when necessary to protect against the strategic use of the defense by defendants who stand to benefit from delay" (internal quotation marks omitted)). As a result, the Court finds Handy has failed to show that he was prejudiced by Defendants' failure to raise qualified immunity at an earlier state and will not find the defense waive.

Having determined qualified immunity was not waived, the Court turns to its application. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010) (internal quotations omitted). Government officials are not liable under § 1983 "as long as their actions reasonably could have been thought consistent with the rights they are alleged to have violated." *Kedra v. Shroeter*, 876 F.3d 424, 434 (3d Cir. 2017). Qualified immunity is an affirmative defense for which the defendants bear the burden of proof. *See Brown v. Cwynar*, 484 F. App'x 676, 680 (3d Cir. 2012).

In deciding whether qualified immunity applies, the Court must consider two questions: "First, the constitutional question is 'whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right'[;] . . . Second, the qualified immunity question is 'whether

the right at issue was "clearly established" at the time of a defendant's alleged misconduct.'" *Southerland v. Pennsylvania*, 389 F. App'x 166, 170 (3d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).[10] The first prong is a "factual question," which is appropriate for juries to decide, while the second prong should be decided by courts. *Curley v. Klem*, 499 F.3d 199, 211 (3d Cir. 2007). Nevertheless, a defendant may be entitled to summary judgment on qualified immunity grounds where "discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts" which would make out a violation of a constitutional right. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Here, Defendants offer two arguments in favor of qualified immunity. First, they claim Handy has failed to show the search of his house was illegal under the Fourth Amendment in light of Magistrate Judge Bedford's signed warrant. Second, even assuming there was some kind of constitutional deprivation, they claim Handy has not established that whatever specific right may have been violated was clearly established. Handy opposes the application of qualified immunity, claiming that "in searching Plaintiff's home without having submitted an affidavit of probable cause to a neutral magistrate judge for an independent review," Defendants "violated long-standing and fundamental principles of Fourth Amendment law." Opp'n to Mot. for Summ. J. 19. He offers no additional specificity.

The Court finds that Defendants are entitled to qualified immunity because Handy has not shown that "no reasonably competent officer would have concluded that a warrant should issue" to search his home. *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). This conclusion requires the Court to consider, as a threshold matter, whether there was a legally sufficient warrant

---

[10] The Court can consider the elements in any sequence. *See Pearson*, 555 U.S. at 236 (abrogating the rigid sequence of analysis previously required by *Saucier v. Katz*, 533 U.S. 194 (2001)).

to search this location, which Handy contests because no affidavit of probable cause was produced in discovery. Although there is no affidavit in the record before the Court, the Court finds that Handy has failed to establish a genuine issue of fact as to its existence.

As noted above, the record before the Court contains a search warrant application for Handy's home, "6351 E. Fariston Dr[.] Phila[Delphia], PA[,] 19120, Brick Row Home." Mot. for Summ. J. Ex. K at 1. The items to be seized were identified as "40 caliber WALTER HANGUN SER#FA#05808, 40 [] caliber AMMUNITIONS AND ANY OTHER . . . HANDGUN THAT MAY BE OF EVIDENCE VALUE THROUGH INVESTIGATION AND AM[M]UNITITIONS." *Id.* The warrant application is signed by Palmiero and the issuing authority, who appears to be a Magistrate Judge Bedford. *Id.* The warrant also indicates it was "approved ADA Harrell 5/24/15 10:30 a.m." *Id.* Importantly, the warrant application also contains a box for the requesting officer to describe the "facts and circumstances" upon which the "probable cause belief is based." *Id.* In response to this prompt, the warrant application states "***SEE CONTINUATION FOR FACTS AND CIRCUMSTANCES***." *Id.* There is also a box which directs the requesting officer to "check here if additional paper is used." *Id.* The box is checked on the warrant application. *Id.*

Notwithstanding the warrant application's direction to "see continuation for facts and circumstances" supporting probable cause, the record does not contain the supporting affidavit. Handy contends this is because no affidavit was ever presented to Magistrate Judge Bedford, and, on this basis, claims the search was illegal. *See* Opp'n to Mot. for Summ. J. 17. However, the record contradicts Handy's assertion, and he has not supported it with evidence of his own.[11] For

---

[11] The Pennsylvania Rules of Criminal Procedure obligated the officers serving the warrant on Handy's home to leave a copy of the warrant and its supporting affidavit with the home's residents, *see* Pa. R. Crim. P. 208(a), but it appears that Handy failed to explore whether Palmiero or

12

example, at Palmiero's deposition, Handy's counsel asked him specifically whether an affidavit existed for the search of the house. Palmiero testified that one did, *see Id.* Ex. C 116:14-24, and that Handy's grandfather reviewed it, *id.* 112:2-3. Moreover, the warrant as described above indicates in two separate locations that the warrant continued beyond the page that is presently part of the record. *See* Mot. for Summ. J. Ex. K at 1. In light of the absence of evidence to the contrary, the Court finds this is circumstantial evidence sufficient to demonstrate the additional pages existed. Moreover, as to the contents of those pages, when asked whether he had any memory of the contents of the missing page at his deposition, Palmiero testified that he "would go as far to reach that it's almost identical to [the warrant for Handy's car] with the exception of the area to be searched." Opp'n to Mot. for Summ. J. Ex. C. 117:8-15. Handy has cited no evidence to contradict Palmiero's testimony on this point either. As a result, the Court finds that he has failed to establish a genuine issue of material fact as to the absence of an affidavit of probable cause supporting the warrant to search his home. *See Yacoub v. Jaguar Land Rover N. Am., LLC*, No. 11-3420, 2013 WL 5411066, at *1 (D.N.J. Sept. 26, 2013) ("If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial.").

Having determined the record does not support the existence of a fact issue as to the existence of an affidavit of probable cause for the search of Handy's home, the Court turns next to the legal standard applicable to resolving the qualified immunity question. Here, Handy is twice disadvantaged because the uncontroverted evidence establishes that the warrant for his house was not only reviewed and approved by Magistrate Judge Bedford, but also by Assistant District

---

Baldomero complied with this obligation. Defendants' failure to do so—which could have been evidenced by, at minimum, an affidavit from Handy's relatives who were home doing the search— may have been enough to create factual issue regarding the affidavit's existence.

Attorney Harrell. *See Fiore v. City of Bethlehem*, 510 F. App'x 215, 220 (3d Cir. 2015) (noting the "climb" to overcome qualified immunity is "even steeper" where officers relied on the advice of the prosecutor and obtained a warrant from a neutral magistrate). Each level of review entitles Defendants to its own, discrete presumption of qualified immunity. *See Messerschmidt*, 565 U.S. at 546-47 (noting "where the alleged Fourth Amendment violation involves a search and seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner."); *see also Kelly v. Borough of Carlisle*, 622 F.3d 248, 255-56 (3d Cir. 2010) ("[W]e hold that a police officer who relies in good faith on a prosecutor's legal opinion that the arrest is warranted under the law is presumptively entitled to qualified immunity from Fourth Amendment claims premised on a lack of probable cause."). Handy may rebut the presumption afforded by Magistrate Judge Bedford's review by showing that "no reasonably competent officer would have concluded that a warrant should issue." *Messerschmidt*, 565 U.S. at 547 (quoting *Malley v. Briggs*, 475 U.S. 335 (1986)). The presumption afforded by ADA Harrell's approval may be rebutted by Handy if he shows that "a reasonable officer would not have relied on the prosecutor's advice." *Kelly*, 622 F.3d at 256.

Handy has failed to rebut the presumption afforded by Defendants' reliance on Magistrate Judge Bedford's warrant. As discussed above, Palmiero testified that it was his recollection that the warrant supporting the affidavit was substantially similar to the warrant for Handy's car. Opp'n to Mot. for Summ. J. Ex. C. 117:8-15. That affidavit claimed probable cause was present to search for evidence of an aggravated assault because Handy was (1) "uncooperative" during the investigation, (2) injured in a manner consistent with having been in a physical fight, and (3) wounded in a manner "consistent with a self[-]inflicted wound. *See* Mot. for Summ. J. Ex. F at 1. The affidavit also explains that a search of police databases revealed that Handy owned a .40

caliber pistol, which is the same caliber of the six fired cartridge casings recovered from the season, and possessed a concealed carry license. *See id.* Even if, in hindsight, the affidavit to search the house might have been somewhat questionable given the sequence of events,[12] the Fourth Amendment does not require perfection. *See Illinois v.* Gates, 462 U.S. 213, 238 (1983) (requiring only "a fair probability that contraband or evidence of a crime will be found in a particular place" to satisfy the constitutional minimums set by the Fourth Amendment). As a result, the Court finds that Handy has not shown that the warrant to search his home was so baseless that "no reasonably competent officer would have concluded that a warrant should not issue." *Messerschmidt*, 565

---

[12] Handy argues the existence of certain video camera footage would vitiate probable cause to have searched his home. Opp'n to Mot. for Summ. J. 8; Sur-Reply in Opp'n to Mot. for Summ. J. 5-6. This argument fails for several reasons. First, he has not made the video part of the summary judgment record and, even though he claims edited portions of the video were published online, the Court refuses to comb the public record. Second, he has not explained how the footage would vitiate probable cause. Even crediting Baldomero's testimony that, to his recollection, the video showed Handy "laying on the ground" and that he "got shot on the foot," Opp'n to Mot. for Summ. J. Ex. B at 33:10-14, it is not clear why Handy's foot wound vitiates probable cause. And third, even had Handy made the video part of the record and the footage unambiguously absolved Handy of any possible hint of wrongdoing, the Court would nevertheless reject his argument because he has provided no evidence that either Palmiero or Baldomero were, or should have been, aware of the video at the time the warrants were obtained or served. For his part, Palmiero testified that video was recovered, but counsel never inquired as to *when* it was recovered or *if or when* Palmiero reviewed it in relation to applying for either of the warrants. *See id.* Ex. C at 103:5-14 (acknowledging that "once there was video recovered and reviewed, [the police] did place clips of those videos on social media"). Baldomero was somewhat more specific, noting that he and Palmiero went to the scene to check for cameras "the following morning." *Id.* Ex. B at 33:4-5. However, it is not clear which morning Baldomero is referring to, and no follow-up was conducted on the point. Having failed to establish that Palmiero or Baldomero were actually, or ought to have been, aware of the video before applying for or serving the warrants, the Court does not find that the video would rebut the applicable presumption of qualified immunity. *See Brown v. City of Philadelphia*, No. 07-0192, 2008 WL 269495, at *6 (E.D. Pa. Jan. 29, 2008) ("Fourth Amendment jurisprudence demands [the Court] prevent hindsight from coloring the valuation of the reasonableness of a search or seizure." (internal quotation marks omitted)).

U.S. at 547. Palmiero and Baldomero are therefore entitled qualified immunity and the Court will grant summary judgment in their favor.[13]

Lastly, the Court turns to Handy's state defamation, slander, and libel claims, which it will dismiss for lack of subject matter jurisdiction. Under 28 U.S.C. § 1367(a), the Court may exercise supplemental jurisdiction over state law claims that "form part of the same case or controversy" as the claims over which it has original jurisdiction. Where the claims implicating original jurisdiction are dismissed and only state claims remain, however, the court "may" decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). In this situation, the Third Circuit has directed district courts to decline to exercise jurisdiction "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Sarpolis v. Tereshko*, 625 F. App'x 594, 599 (3d Cir. 2016) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)). Here, no party has offered a compelling rationale for the continued exercise of this Court's jurisdiction. As a result, it will dismiss Handy's state claims for lack of jurisdiction.[14]

---

[13] Because the Court finds that Palmiero and Baldomero are entitled to qualified immunity based on Magistrate Judge Bedford's signed warrant, the Court need not address whether they were also entitled to qualified immunity based on ADA Harrell's approval.

[14] Although not the basis for the Court's decision, the Court notes Handy's defamation, slander, and libel claims are clearly time-barred and thus, even if it had retained jurisdiction, the Court would have granted summary judgment. As Handy's counsel conceded at oral argument, the statute of limitations applicable to Handy's defamation, slander, and libel claims is one year, *see* 42 Pa. Cons. Stat. § 5523(1), and Handy filed suit almost two years after publication, *see* Notice of Removal Ex. A. The only defense to the statute of limitations issue Handy raises is Defendants' failure to assert the defense earlier. Although the Court agrees that Defendants could have raised the issue earlier, in the absence of prejudice—which Handy conceded at oral argument he could not show—a party may raise the statute of limitations by motion at any time. *See Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 506 (3d Cir. 2006) (noting a statute of limitations defense may be raised "by motion, at any time (even after trial), if plaintiff[] suffer[s] no prejudice"). Thus, had the Court retained jurisdiction, it would have considered the statute of limitations issue and granted relief on that basis.

**CONCLUSION**

The Court will grant summary judgment in Defendants favor on Handy's § 1983 claim for violation of Fourth Amendment rights (Count V) and dismiss his claims for defamation (Count VII), libel (Count VIII) ,and slander (erroneously labeled as "Count VIII") for lack of jurisdiction. The Court will also dismiss Handy's motions to strike Defendants' Answer and their opposition to his motion to strike as moot.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.